# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=====

## NO. 03-03-00696-CV

=====

**James Key, Appellant**

**v.**

**Lockhart Independent School District and, Appellee**

=====

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 207TH JUDICIAL DISTRICT
### NO. 01-0-391, HONORABLE CHARLES R. RAMSEY, JUDGE PRESIDING

=====

## M E M O R A N D U M   O P I N I O N

Appellant James Key sued his former employer Lockhart Independent School District (Lockhart) alleging that he had been discharged in retaliation for filing a workers' compensation claim after being injured on the job. *See* Tex. Lab. Code. Ann. § 451.001 (West 1996). Lockhart sought both traditional summary judgment and no-evidence summary judgment. The trial court granted Lockhart's summary-judgment motion without specifying the grounds on which the motion was granted. Key appeals the trial court's summary judgment in favor of Lockhart. Because Key did not rebut Lockhart's legitimate justification for dismissing Key, we affirm the summary judgment.

**FACTUAL BACKGROUND**

Key was hired by Lockhart as a paraprofessional instructional aide in the special education department for the 2000-2001 school year. He was employed on an at-will basis. In September 2000, Key injured his knee at work while attempting to break up an altercation between two students. Key's doctor recommended physical therapy in advance of surgery. Key was advised by Lockhart that he could not work only half-days in order to accommodate his physical therapy, so Key left his job and initiated a claim for workers' compensation. Key began receiving workers' compensation and remained away from his job for several months. Physical therapy aggravated Key's knee injury, and his doctor recommended surgery. Against his doctor's advice, however, Key returned to work in late April 2001 for fear that he would be terminated if he did not complete the school year prior to his surgery.

Upon his return, Key was informed by the principal at his school that his position was to be eliminated due to a reduction in force at the school district. Key was given a copy of an "exit report of school employee" form signed by his principal, dated May 25, 2001, indicating that his position had been "riffed." The term "riffed" refers to the elimination of a job due to a budgetary reduction in force. The form indicated, however, that it was "not to be used as notice to [an] employee." Key received a letter from the school district dated June 8, 2001, giving him "notice of reasonable assurance of continued employment" for the following school year. The notice provided, however:

> This assurance is contingent on continued school operations and will not apply in the event of any disruption that is beyond the control of the district (e.g., lack of school funding, natural disasters, court orders, public insurrections, war, etc.)

2

Nothing contained herein constitutes an employment contract. Your continued employment is on an at-will basis. At-will employers may terminate employees at any time for any reason or for no reason, except legally impermissible reasons.

On June 12, 2001, Assistant Superintendent Theresa Ramirez sent a letter to Key clarifying that the notice of assurance had been sent in error, that Key's position had been proposed for a reduction in force for the 2001-2002 school year, and that his employment with the district had ended. Key filed a grievance with the superintendent seeking reinstatement. The superintendent denied Key's grievance in a letter dated July 16, 2001. Key filed an appeal to the Lockhart Board of Trustees (the Board) which was denied.

On July 10, 2001, the Board voted to eliminate nine paraprofessional positions including one special education-secondary instructional aide in order to balance the school district budget. The minutes from an earlier meeting of the Board indicated a projected budget shortfall of $779,000 for the 2001-2002 school year. An August 2001 report, however, projected a budget surplus for the 2001-2002 school year of over $300,000.

## DISCUSSION

Key's only issue on appeal is his challenge to the trial court's summary judgment. Lockhart sought both traditional summary judgment and no-evidence summary judgment, and the trial court granted Lockhart's motion without specifying the grounds it relied upon.

### Standard of Review

The standard for reviewing traditional summary judgments is well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact

exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive litigants of the right to trial by jury but to eliminate patently unmeritorious claims and defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972). We will affirm a summary judgment on appeal if any ground asserted in the motion for summary judgment is valid. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). Thus, a party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

A no-evidence summary judgment is properly granted if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Thus, a no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). Our task is to determine whether the plaintiff has produced any evidence of probative force to raise fact issues on the material questions presented. *See id*. We must consider all the evidence in the light most favorable to the party against whom the no-evidence

4

summary judgment was rendered, every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Havner*, 953 S.W.2d at 711.

Where the trial court does not specify the grounds on which a summary judgment is based, we must affirm if any theories advanced in support of summary judgment are meritorious. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Section 451.001 of the labor code prohibits an employer from discharging an employee in retaliation for the good faith filing of a workers' compensation claim. An employee may recover damages for retaliatory discharge under this provision only if he proves that without his filing a workers' compensation claim, the discharge would not have occurred when it did. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). A burden-shifting analysis is applied to a retaliatory discharge claim. *La Tier v. Compaq Computer Corp.*, 123 S.W.3d 557, 561 (Tex. App.—San Antonio 2003, no pet.) (citing *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000)). The plaintiff bears the initial burden of establishing a causal link between the termination and the filing of a claim for workers' compensation benefits. *Id*. Once this burden is met, the employer must rebut the alleged discrimination by showing that there was a legitimate reason for the employee's termination. *Id*. If the employer establishes a non-retaliatory reason for the discharge, the burden shifts back to the employee either to present evidence raising a fact issue on whether the reason for termination was a pretext for the discrimination, or to challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason. *Id*.; *Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994).

5

**Causal Link**

Corresponding with Lockhart's no-evidence summary judgment argument, we first consider whether Key's evidence raised an issue of material fact on each of the elements of a *prima facie* showing that Lockhart eliminated his position because he filed a workers' compensation claim. *See La Tier*, 123 S.W.3d at 562. In considering whether a plaintiff has established a *prima facie* case under section 451.001, the supreme court has discussed a variety of forms of evidence that may establish a causal link between an employee's termination and the filing of a workers' compensation claim. *See Cazarez*, 937 S.W.2d at 451. These include: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Id.*

Key asserts that he made a *prima facie* showing that there was a causal link between his termination and the filing of his workers' compensation claim because Lockhart had knowledge of his claim, it failed to adhere to established policies regarding the discharge of employees, and there was evidence that the stated reasons for Key's discharge were false because an August 2001 report projected a budget surplus. *See id.* Key presented evidence that his principal was aware of his workers' compensation claim and that his principal made the initial decision to discharge him. Key states in his affidavit that his principal advised him upon returning to work that his employment with the district would cease at the end of the school year. He was also given a form signed by his principal indicating that his position was being "riffed." Both of these incidents occurred well before the Board decided to eliminate an instructional aide position on July 10, 2001. A trier of fact could

reasonably infer from this evidence that Key's principal, who certainly knew Key's absence was related to his workers' compensation claim, had made the decision to terminate Key. Furthermore, Key states in his affidavit that the school district informed him that he should make a workers' compensation claim and take off work for his physical therapy. There is also a Texas Workers' Compensation Commission form signed by Lockhart's finance director indicating that the district was aware of Key's claim. Even if the decision to discharge Key originated from the school district, there is evidence that the decision-maker was aware of Key's claim.

Key's communications with his principal upon returning to work and the form indicating that his position had been "riffed" also lend credence to his assertion that the district failed to adhere to established policies. According to Lockhart policy, the Board delegated the authority to employ and dismiss at-will paraprofessionals such as Key to the superintendent. The evidence indicates that Key's principal, not the superintendent, made the initial decision to discharge Key. In fact, the superintendent did not inform Key of his discharge until June 12, 2001, four days after sending him a letter confirming his employment for the following year. This evidence could reasonably be viewed to indicate that the district failed to adhere to its established policies in discharging Key.

Contrary to Key's assertions, however, we do not regard the August 2001 report projecting a small budget surplus as evidence that Lockhart's stated reason for Key's discharge was false. The August 2001 report was made after spending cuts, including the elimination of Key's job and eight others, were factored into Lockhart's budget. The fact that Lockhart's cost-cutting measures were effective does not, in any way, undermine its justification for eliminating Key's position.

7

Key produced evidence that his principal and the district were aware of his claim, and that the district failed to adhere to established procedures in discharging him. We hold that this evidence raised an issue of material fact as to Key's *prima facie* showing that he was discharged because he filed a workers' compensation claim.

**Legitimate Reason and Pretext**

Once Key made a *prima facie* showing of retaliation, Lockhart bore the burden of establishing a legitimate reason for Key's discharge. *See La Tier*, 123 S.W.3d at 561. An employer's legitimate non-discriminatory reason for a termination shifts the burden back to the employee to either: (1) present evidence raising a fact issue on whether the reason for termination was a pretext for the discrimination; or (2) challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason. *Id*. Key does not dispute that Lockhart met its burden. Lockhart superintendent Tony Jones stated in his affidavit that Key was discharged because the district eliminated one of its instructional aide positions in order to balance the budget and Key was the least senior of the two employees in that position. This explanation is bolstered by the consistent statements and correspondence to Key that his position was being "riffed." We hold that Lockhart conclusively established its burden of providing a legitimate, nondiscriminatory reason for discharging Key. *See Rhone-Poulenc, Inc.*, 997 S.W.2d at 223 (traditional summary-judgment movant must conclusively establish elements of defense as matter of law).

Because Lockhart supplied proof of a legitimate reason for Key's discharge, Key retained the ultimate burden to show that the Lockhart's justification for Key's discharge was a

8

pretext for its retaliatory motive. *See La Tier*, 123 S.W.3d at 564. Key relies only on the evidence supporting his *prima facie* showing to establish that Lockhart's budgetary concerns were only a pretext for its retaliatory motive. Therefore, Key's only evidence that Lockhart's justification for discharging Key was false is that Lockhart was aware of his claim, that it failed to follow proper procedure in discharging him, and that after making budget cuts—including eliminating Key's position—Lockhart had a small budget surplus. We do not see anything inconsistent with Lockhart's stated reason for discharging Key in the fact that Lockhart was aware of Key's workers' compensation claim and that it failed to follow established procedures by giving Key advanced notice that his position would be eliminated due to budget cuts. Furthermore, the fact that the spending cuts that eliminated Key's position were successful in balancing Lockhart's budget does not rebut Lockhart's stated purpose for making the cut; rather it confirms it. Because Key failed to present even a scintilla of evidence that Lockhart's legitimate reason for Key's discharge was a pretext for a retaliatory motive, we hold that the trial court properly granted Lockhart's summary-judgment motion.

## CONCLUSION

We overrule Key's only issue and affirm the summary judgment.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: July 29, 2004

9