**Reversed and Remanded and Opinion filed August 23, 2022.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-18-00319-CV

**LI LI, Appellant**

**V.**

**PEMBERTON PARK COMMUNITY ASSOCIATION, INC., Appellee**

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2017-17980**

## O P I N I O N

A property owners' association sued a homeowner for allegedly violating restrictive covenants. The trial court granted the association's summary-judgment motion, and this court affirmed the trial court's judgment. The Supreme Court of Texas reversed this court's judgment and remanded for this court to determine whether the summary-judgment evidence raises a fact issue as to whether the association's exercise of discretionary authority in enforcing the restrictive covenants against the homeowner was arbitrary, capricious, or discriminatory, and

therefore unreasonable. Concluding that the summary-judgment evidence raises a fact issue on this point, we reverse the trial court's judgment and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/plaintiff Pemberton Park Community Association, Inc. (the "Association") is a property owners' association with full power and authority to enforce the covenants and restrictions imposed on property owners in Pemberton Park by the "Declaration of Covenants, Conditions, Restrictions and Easements for Pemberton Park" (the "Restrictive Covenants"). The Association filed suit against appellant/defendant Li Li, the owner of a Pemberton Park home subject to the Restrictive Covenants. The Association claimed that Li was in violation of the Restrictive Covenants because she refused to re-paint the area to the right of the second-story window of her home a uniform color so that the area would match or otherwise blend with the exterior paint (the "Painting"). The Association sought a permanent injunction compelling Li to do the Painting as well as statutory damages under Property Code section 202.004(c) for the violation of the Restrictive Covenants, and reasonable attorney's fees.

Representing herself, as she did during most of the trial-court proceedings, Li filed an answer, asserting a general denial and several defenses. Li filed a motion for summary judgment, and the Association filed "Plaintiff's Second Motion for Summary Judgment" seeking a traditional summary judgment on its sole claim against Li for violating the Restrictive Covenants. In its motion, the Association proved that the Restrictive Covenants applied to Li's property. The Association asserted that Li had violated sections 6.02.1, 6.02.2, and 8.01.3 of the Restrictive Covenants. The Association submitted an affidavit from one of its representatives showing that despite notices from the Association, Li had failed to

do the Painting and that this failure violated the Restrictive Covenants. The affiant testified that this violation remained uncured. The Association submitted a photograph of the exterior of Li's home showing that the paint in an area to the right of a second-story window of Li's home was not the same color as the paint on the rest of the exterior of Li's home. The Association also submitted an affidavit from its attorney as to reasonable attorney's fees. In its motion, the Association did not cite Texas Property Code section 202.004(a), nor did the Association seek the benefit of any presumption that it acted in a reasonable manner. The Association did not assert that it was exercising discretionary authority.

Li filed a response in opposition to the Association's summary-judgment motion. Li did not assert that the exterior paint on her house was of a uniform color. Li referred to the part her summary-judgment motion in which she asserted that the Association selectively enforced the Restrictive Covenants by selectively sending out enforcement letters and selectively following up with enforcement actions, as well evidence Li had submitted in support of this part of her summary-judgment motion.

The trial court denied Li's motion, granted the Association's motion, and rendered a final judgment in which the court (1) issued a permanent injunction commanding Li to immediately do the Painting; (2) ordered Li to pay the Association $1,000 for five days of statutory damages under Texas Property Code section 202.004(c), and (3) ordered Li to pay the Association $16,572.23 for the Association's attorney's fees and expenses for the trial court proceedings, as well as all court costs.

On appeal in this court, Li challenged the trial court's judgment by asserting that the summary judgment evidence raises a fact issue as to (1) whether the Association's exercise of discretionary authority in enforcing the restrictive covenants against Li was arbitrary, capricious, or discriminatory, and therefore

unreasonable, or (2) whether the Association had abandoned the parts of the Restrictive Covenants that Li allegedly violated. This court concluded that Li did not raise either of these points in response to the Association's summary-judgment motion and accordingly affirmed the trial court's judgment.[1] *See Li v. Pemberton Park Community Assoc., Inc.*, No. 14-18-00319-CV, 2020 WL 1467350, at \*4 (Tex. App.—Houston [14th Dist.] Mar. 26, 2020), *rev'd*, 631 S.W.3d 701 (Tex. 2021) (per curiam).

The Supreme Court of Texas granted review and held that this court had erred in concluding that Li failed to preserve error in the trial court as to the first argument. Li did not raise the second argument in the high court. *See Li v. Pemberton Park Community Assoc., Inc.*, 631 S.W.3d 701, 703–06 (Tex. 2021) (per curiam). The high court noted that in both her summary-judgment response and in her summary-judgment motion Li argued that the Association selectively enforced its restrictive covenants and failed to engage in fair dealing or apply the covenants in an "equal and same manner [sic]." *See id*. at 704. The Supreme Court of Texas concluded that, although Li did not use the words "arbitrary, capricious, or discriminatory" or cite section 202.004(a) of the Texas Property Code,[2] she argued the issue's substance by arguing that she was singled out for discriminatory

---

[1] Li raised these points in her second and third issues respectively. In her first issue, Li asserted a *Malooly* point in which she generally asserted that the trial court erred in granting the Association's summary-judgment motion. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Under her fourth issue, Li asserted that the trial court erred in issuing a permanent injunction and awarding statutory damages and attorney's fees because the trial court erred in granting summary judgment for the reasons asserted under the second and third issues. Li did not present any argument on appeal challenging the trial court's denial of her summary-judgment motion, nor did she seek rendition of judgment in her favor.

[2] Under Property Code section 202.004(a), "[a]n exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory."  Tex. Prop. Code Ann. § 202.004(a) (West, Westlaw through 2021 R.S.).

and arbitrary treatment because the deed restrictions were "selectively enforced" against her. *See id*. The high court reversed this court's judgment and remanded for further proceedings.

## II. ISSUES AND ANALYSIS

Under her second issue, Li asserts that the trial court erred in granting summary judgment because the summary-judgment evidence raises a fact issue as to whether the Association's exercise of discretionary authority in enforcing the restrictive covenants against Li was arbitrary, capricious, or discriminatory, and therefore unreasonable. Based on this alleged error, Li asserts under her fourth issue that the trial court erred in issuing a permanent injunction and awarding statutory damages and attorney's fees.

**A.    Did the Association exercise discretionary authority in enforcing the restrictive covenants against Li?**

Under Property Code section 202.004(a), "[a]n exercise of discretionary authority by a property owners' association . . . concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." Tex. Prop. Code Ann. § 202.004(a). In the trial court, the Association did not assert that it had exercised discretionary authority, nor did the Association rely on the presumption of reasonableness in Property Code section 202.004(a). We first address whether the Association exercised discretionary authority in enforcing the restrictive covenants against Li.

In its summary-judgment motion, the Association asserted that Li had violated the following parts of the Restrictive Covenants:

Section 6.02.1. <u>General; Interior Maintenance</u>. All maintenance of each Lot and all improvements thereon is the sole responsibility of the Owner thereof. Each Owner must maintain their Lot and all

5

improvements thereon at all times in such manner as to obtain and maintain **Prevailing Community Standards** on a continuing basis as may be more specifically determined by this Declaration and other Governing Documents, including as determined from time to time by duly adopted Architectural Guidelines and Rules and Regulations . . . . MAINTENANCE WHICH AFFECTS THE EXTERIOR APPEARANCE OF A RESIDENCE OR GARAGE IS SUBJECT TO APPLICABLE PROVISIONS OF ARTICLE IV REGARDING ARCHITECTURAL CONTROL COMMITTEE APPROVAL.

Section 6.02.2. <u>Residences and Other Improvements</u>. Each Owner shall maintain the exterior of each Owner's residence, garage, and all other buildings, structures, fences, walls, recreational equipment and improvements located upon each Owner's Lot, in an attractive, sound and well maintained condition, including proper maintenance and repair as needed of paint, bricks, siding, roofs, rain gutters, downspouts, exterior walls, driveways, parking areas and all other exterior portions of the Owner's residence and garage. Without limitation of the foregoing, each Owner shall provide proper repair and maintenance as and when needed as follows (the term "residence" includes garage, as applicable):

(a) The exterior paint on each Owner's residence must be maintained so that no portion thereof peels, scales or cracks excessively, and all painted portions remain neat and free of mildew and discoloration.

. . .

Section 8.01.3. <u>New Construction and Continued Maintenance Required</u>. All residences, buildings and structures must be of new construction, and no residence, building or structure may be moved from another location to any Lot without prior written approval of the [Architectural Control Committee]. All residences, buildings and structures must be kept in good repair, must be painted (as applicable) when necessary to preserve their attractiveness and must otherwise be maintained in such manner as to obtain and maintain **Prevailing Community Standards**.[3]

---

[3] Boldface added.

Two of the three violations involve an alleged failure to maintain "Prevailing Community Standards," a term which section 2.19 of the Restrictive Covenants defines as "those standards of aesthetics, environment, appearance, architectural design and style, maintenance, conduct[,] and usage generally prevailing in the Subdivision as **reasonably determined by the Board or [Architectural Control Committee]** at any given pertinent time and from time to time . . . ." [4] Section 10.02 of the Restrictive Covenants, the general enforcement provision, states that the Association has "the right to enforce observance and performance of all restrictions, covenants, conditions and easements set forth in this Declaration and in other Governing Documents."

Under the unambiguous language of the Restrictive Covenants, we conclude that the Association exercised discretionary authority in enforcing the restrictive covenants against Li. *See Li*, 631 S.W.3d at 705 n.4 (stating that the Association had provided no reason to doubt that its enforcement of the Restrictive Covenants against Li was the "exercise of discretionary authority" and stating that the Supreme Court of Texas saw "no possibility [the Association] could have shown otherwise if given the chance.").

**B. Do the Restrictive Covenants give the Association the authority to identify and enforce violations of the Restrictive Covenants at its sole discretion, not reviewable under any reasonableness standard?**

The Authority asserts that under the Restrictive Covenants, the Association's Board of Directors enjoys the express contractual authority to identify and enforce deed restriction violations at its sole discretion. If the Association or its Board of Directors had the sole and absolute discretion to identify and enforce violations of the Restrictive Covenants, that power would arguably make the Association's enforcement actions unreviewable under any reasonableness standard and take

---

[4] Boldface added.

these actions outside of the scope of Property Code section 202.004(a). *See* Tex. Prop. Code Ann. § 202.004(a); *La Ventana Ranch Owners' Ass'n v. Davis*, 363 S.W.3d 632, 646–47 (Tex. App.—Austin 2011, pet. denied). After reviewing the parts of the Restrictive Covenants cited by the Authority for this proposition, as well as the remainder of the Restrictive Covenants in the record, we conclude that under the plain text of the Restrictive Covenants, neither the Association nor its Board of Directors possess the authority to identify and enforce deed restriction violations at its sole and absolute discretion, unreviewable under any reasonableness standard. *See Li*, 631 S.W.3d at 705 n.4 (stating that the Association had provided no reason to doubt that its enforcement of the Restrictive Covenants against Li was the "exercise of discretionary authority" and stating that the Supreme Court of Texas saw "no possibility [the Association] could have shown otherwise if given the chance.").

**C.** **Does the summary-judgment evidence raise a fact issue as to whether the Association's exercise of discretionary authority in enforcing the restrictive covenants against Li was arbitrary, capricious, or discriminatory, and therefore unreasonable?**

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In this case, the Supreme Court of Texas concluded that Li sought to avoid summary judgment in favor of the Association based on an affirmative defense under section 202.004(a) of the Texas Property Code. *See* Tex. Prop. Code Ann. § 202.004(a); *Li*, 631 S.W.3d at 703–05. A party seeking to avoid summary judgment based on an affirmative defense bears the burden of raising a fact issue on each element of that defense. *Weinberg v.*

8

*Baharav*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.] 2018, no pet.). A nonmovant asserting an affirmative defense is not required to prove the affirmative defense as a matter of law—raising a fact issue is enough. *Id.* In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

In her summary-judgment affidavit, Li testified that the Association "not only selectively sent out deed violation enforcement letters, but also selectively took follow-up actions for enforcement." Li stated that she "was selectively enforced by [the Association]." The Association's evidence shows that the Association sent Li a letter in November 2015 asking her to paint an area by the second-story window. Li submitted a November 16, 2015 email she sent to the management company in which Li states that she received this letter and then discussed the letter with Linda Bartel, the Association's Community Manager. Li states that "Sherwin Williams" matched the paint and that it is very hard to exactly match the color. Li says that the color looks "close" on cloudy days but not on sunny days. A person from the management company responded to Li's email saying that the person had "notated" Li's account and closed the violation.

Li received a second letter from the Association in March 2016. In the Letter, the Association stated that Li had not corrected the violation mentioned in the first letter and asked Li to "repaint area to the right of second story window" within 30 days of receiving the second letter. After receiving the second letter, Li

emailed several members of the Association's Board of Directors stating that she had a hairline crack caulked 1.5 years ago with transparent caulk. Li stated that she did not receive any violation letter for more than a year after the caulking work was done. Li stated that Linda Bartel told Li to paint the area containing the caulking and that Bartel said that Sherwin Williams could exactly match the paint. According to Li, Sherwin Williams could not exactly match the paint, and the paint that Li put in that area did not match the exterior of her house. Li stated that she "did another match with Home Depot" and that Home Depot could not match the paint either. In her email, Li complained that Bartel caused the whole problem by mistakenly thinking that the paint could be exactly matched. Li asserted that it would cost her $5,000 to repaint the entire exterior and that it was not reasonable for the Association to ask her to pay that amount of money to fix a small hairline crack.

In April 2016, Li emailed a person at the management company saying that Li had removed a small piece of the exterior and taken it to Home Depot to be matched. Li stated that she had painted the area in question a third time with paint matched by an associate in the paint department. Li said that this color did not match either.

In August 2016, Li received a third letter from the Association stating that the violation had not been resolved and asking Li to "repaint area to the right of second story window to its original condition" within 30 days of receiving the third letter. The letter stated that it was a final notice and also stated that Li had the right to request a hearing before the Association's Board of Directors. After receiving this letter, Li emailed a person at the management company stating that Li was looking forward to an acceptable resolution of the matter. Li stated that Bartel and a member of the Association's Board of Directors stated that the paint could be matched using a "chip" from the old area so that the area in question could be

10

repainted to its original condition. Li said that she gave the Association permission to try to do the repainting of the area, with the management company paying for the repainting. Li said that she wished she had insisted on leaving the transparent caulk unpainted instead of painting it as Bartel instructed.

In September 2016, the Association sent a fourth letter stating that the Association's Board of Directors had decided to deny the request that Li made at her September 1, 2016 hearing before the board, in which she asked that the exterior paint alterations to her house be allowed to remain. The Association stated that the paint Li had used for the repainting "is not the same color scope nor is it the same texture as originally established." The Association stated that if Li did not correct the violation by September 16, 2016, the Association would move forward with litigation. In a September 10, 2016 email to representatives of the management company and the Board of Directors, Li stated that many other homes in the community had violations, but "the owners were not enforced for the violations or sued." On September 15, 2016, Li filed suit against the Association in Justice Court. On that date, Li sent an email to Bartel and various board members stating the Li had filed suit and noting that a board member whom Li claims is the President of the Association has had mismatched paint on the exterior of his house in Pemberton Park for over six years. The summary-judgment evidence contains photographs of this house, and the Association has not submitted any evidence showing that any repainting has been done on this house. The Association filed this lawsuit on March 15, 2017.

The summary-judgment evidence also contains photographs Li submitted of other Pemberton Park houses showing alleged violations of the Restrictive Covenants that Li claims were not corrected until after she sued the Association and other alleged violations that Li claimed were not corrected as of November 2017.

The Association submitted what it described as "the full deed restriction violation history and enforcement of all accounts from November, 2015 to November, 2017 for the [Association]" (the "Violation History"). The Violation History shows fourteen accounts other than Li's, in which the Association requested that the owner paint an area of the property in response to an alleged violation. Of these fourteen alleged violations, the Violation History has a notation that the homeowner responded and that the violation had been remedied only as to two properties. The Association did submit photographs showing that many of the alleged violations shown in the photographs submitted by Li had been corrected. Nonetheless, the Association did not show that all of the alleged violations had been corrected or were not violations, including the alleged violation at the house of the Association's President.

Under the applicable standard of review, we conclude that the summary-judgment evidence raises a genuine fact issue as to whether the Association's exercise of discretionary authority in enforcing the restrictive covenants against Li was arbitrary, capricious, or discriminatory, and therefore unreasonable. *See Gettysburg Homeowners Association, Inc. v. Olson*, 768 S.W.2d 369, 370–72 (Tex. App.—Houston [14th Dist.] 1989, no writ) (holding that trial court did not err in denying homeowners association's application for a temporary injunction because the trial court could have determined that the association did not show a probable right to recover at trial based on a finding under Property Code section 202.004(a) that the association exercised its authority in an arbitrary or capricious manner); *Sierra Crest Homeowners Association, Inc. v. Villalobos*, 527 S.W.3d 235, 241–48 (Tex. App.—El Paso 2016, no pet.) (concluding that the evidence was legally and factually sufficient to support the jury's finding that a homeowners association had acted arbitrarily, capriciously, or discriminatorily). Therefore, we sustain Li's second issue.

### III. CONCLUSION

Under the unambiguous language of the Restrictive Covenants, the Association exercised discretionary authority in enforcing the restrictive covenants against Li. Under the plain text of the Restrictive Covenants, neither the Association nor its Board of Directors possess the authority to identify and enforce deed restriction violations at its sole and absolute discretion, unreviewable under any reasonableness standard. The summary-judgment evidence raises a genuine fact issue as to whether the Association's exercise of discretionary authority in enforcing the restrictive covenants against Li was arbitrary, capricious, or discriminatory, and therefore unreasonable. Because the summary-judgment evidence raises a genuine fact issue as to each element of Li's affirmative defense under Property Code section 202.004(a), the trial court erred in granting the Association's summary-judgment motion and rendering a final judgment in which the court (1) issued a permanent injunction, (2) ordered Li to pay the Association statutory damages under Texas Property Code section 202.004(c), and (3) ordered Li to pay the Association attorney's fees, expenses, and court costs. Therefore, we sustain Li's second and fourth issues, reverse the trial court's judgment, and remand the case for further proceedings.

/s/  Randy Wilson
Justice

Panel consists of Justices Jewell, Bourliot, and Wilson.